## NOT YET SCHEDULED FOR ORAL ARGUMENT

## Nos. 25-5046, 25-5047

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

AIDS VACCINE ADVOCACY COALITION, et al.,
*Plaintiffs-Appellees*,

v.

U.S. DEPARTMENT OF STATE,
*Defendants-Appellants.*

———————————

GLOBAL HEALTH CENTER, et al.,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, et al.,
*Defendants-Appellants.*

———————————

On Appeal from the United States District Court
for the District of Columbia

———————————

**EMERGENCY MOTION FOR IMMEDIATE ADMINISTRATIVE STAY AND FOR STAY
PENDING APPEAL**

———————————

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
SEAN R. JANDA
BRIAN J. SPRINGER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7537*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, D.C. 20530*
  *(202) 616-5446*
  *brian.j.springer@usdoj.gov*

# INTRODUCTION

In this action under the Administrative Procedure Act, the district court has ordered the federal government to pay nearly $2 billion in taxpayer dollars within 36 hours, without regard to payment-integrity systems that would ensure that the monies claimed are properly owed, without regard to the federal government's meritorious arguments to the contrary, and without so much as addressing the government's sovereign-immunity defense. A stay pending appeal, and an immediate administrative stay, are necessary to prevent grave and irreparable harm to the government.

To be very clear: the government is committed to paying for work that was properly completed, so long as the claims are legitimate. What the government cannot do is pay arbitrarily determined expenses on a timeline of the district court's choosing, so that a district court creates a payment plan at odds with the President's obligations under Article II and bedrock principles of federal sovereign immunity. And regardless whether this Court stays the district court's order, agency leadership has determined that the ordered payments "cannot be accomplished in the time allotted by the" district court. *AIDS Vaccine* Dkt. No. 37-1, at 2. In light of these exigencies, we request an administrative stay by February 26, 2025, at 1:00 PM. If no

administrative stay is granted, we waive our reply and request a ruling on the stay motion by 4:00 PM.

Although this litigation began as a (meritless) challenge under the APA to a pause in certain federal contracts and grants, it has morphed in the last 24 hours into a sweeping effort to require massive outlays of funds under thousands of funding instruments, including many that do not involve any of the plaintiffs and are not even in the record.  There are statutory schemes, administrative remedies, and an entire Article I court dedicated to resolving disputes over contractual payments for already-performed work, which precludes review under the APA.  But the district court brushed aside those arguments, even though they were raised by the government in its opposition to a preliminary injunction filed last week and renewed at today's hearing, on the ground that the government had not adequately preserved the arguments, in writing, between the filing of a motion Monday night and an emergency hearing convened at 11:00 Tuesday morning.  The original order in this case, for that matter, was *also* issued before the government had any opportunity to respond in writing to plaintiffs' deeply flawed arguments.

The district court's order is incredibly intrusive and profoundly erroneous.  It appears to contemplate the immediately outlay of nearly $2

2

billion.  The government has no practical mechanism to recover wrongfully disbursed funds that go out the door to entities that have complained that they are near insolvency.  And the district court's broad exercise of jurisdiction, resolving monetary claims beyond its proper authority and addressing the hypothetical claims of parties not before the court, was without legal basis.  The district court's order should be stayed pending appeal.[1]  In addition, the order should be immediately administratively stayed.

## STATEMENT

1.  This case began as a challenge to a pause of federal foreign assistance funding.  On January 20, 2025, the President issued Executive Order No. 14,169, 90 Fed. Reg. 8619 (Jan. 30, 2025), titled *Reevaluating and Realigning United States Foreign Aid*.  That Executive Order recognized that foreign assistance funds "are not aligned with American interests and in many cases antithetical to American values" in ways that "serve to

---

[1] The government filed a motion to stay the temporary restraining order the district court purports to enforce pending appeal.  *See AIDS Vaccine* Dkt. No. 33.  The district court denied the government's motion.  *See AIDS Vaccine* Dkt. No. 34.  The government also filed a motion specifically to stay this order.  *See AIDS Vaccine* Dkt. No. 37; *Global Health* Dkt. No. 39.  We will inform this Court promptly when the district court acts on that motion.  Plaintiffs oppose a stay.

3

destabilize world peace." *Id.* § 1.  The Executive Order declared that "[i]t is the policy of United States that no further United States foreign assistance shall be disbursed in a manner that is not fully aligned with the foreign policy of the President." *Id.* § 2.

To provide time to review foreign assistance programs "for programmatic efficiency and consistency with United States foreign policy," the Executive Order directed agencies to "immediately pause new obligations and disbursements of development assistance funds to foreign countries" and implementing organizations and contractors.  Executive Order No. 14,169, § 3(a).  "[W]ithin 90 days," agencies would conduct a review and determine "whether to continue, modify, or cease each foreign assistance program" in consultation with the Director of the Office of Management and Budget and with the concurrence of the Secretary of State. *Id.* § 3(b), (c).  The Secretary of State had authority to waive the pause "for specific programs" and may approve new obligations or resume disbursements during the 90-day review period if review is completed sooner. *Id.* § 3(d), (e).

Consistent with the President's Executive Order, the Secretary of State directed a pause on foreign assistance programs funded by or through

the State Department and the Agency for International Development (USAID). *See AIDS Vaccine* Dkt. No. 15-1, at 18-22. The Secretary has approved various waivers, including for foreign military financing for Israel and Egypt, emergency food expenses, and life-saving humanitarian assistance pending review. *Id.* at 6-7; Sec'y of State, Emergency Humanitarian Waiver to Foreign Assistance Pause (Jan. 28, 2025), http://state.gov/emergency-humanitarian-waiver-toforeign-assistance-pause. The Secretary has also approved a waiver for legitimate expenses incurred before the pause went into effect and legitimate expenses associated with stop-work orders. *AIDS Vaccine* Dkt. No. 15-1, at 6-7.

2. Plaintiffs are organizations that receive, or have members who receive, federal funds for foreign assistance work. Plaintiffs brought suit on February 10, 2025, challenging the Executive Branch's decision to pause foreign assistance funds pending further review as a violation of the Administrative Procedure Act (APA) and the Constitution. *AIDS Vaccine* Dkt. No. 1; *Global Health* Dkt. No. 1. Plaintiffs moved for temporary restraining orders on February 11 and 12, 2025.

The district court held a hearing on February 12, before the government had an opportunity to respond in writing to either motion. The

5

court then granted relief to plaintiffs the next day. *AIDS Vaccine* Dkt. No.

17. While recognizing that the pause was designed to provide the

government with an "opportunity to review programs for their efficiency and

consistency with priorities" and that "there is nothing arbitrary and

capricious about executive agencies conducting [such] review," the court

questioned whether the pause "was a rational precursor to reviewing

programs." *Id.* at 10. And the court believed that the government had

"fail[ed] to consider immense reliance interests" in implementing the pause.

*Id.* The court concluded that plaintiffs' harms outweighed "the importance of

respecting the President's Article II power as it relates to foreign policy." *Id.*

at 12.

The court enjoined the agency defendants and their heads from

"enforcing or giving effect to" any directive implementing the President's

Executive Order No. 14,169, including the State Department's memorandum.

*AIDS Vaccine* Dkt. No. 17, at 14. The order prohibited "suspending,

pausing, or otherwise preventing the obligation or disbursement of

appropriated foreign-assistance funds" and "issuing, implementing,

enforcing, or otherwise giving effect to terminations, suspensions, or stop-

work orders" in connection with contracts, grants, or other agreements that

6

existed on January 19, 2025.  *Id.*  The order did, however, allow the agency

defendants to "tak[e] action to enforce the terms of particular contracts,

including with respect to expirations, modifications, or terminations pursuant

to contractual provisions."  *Id.*

In the interim, the parties have submitted several status reports and

filings regarding various factual developments and compliance efforts.  Given

the court's order enjoining the pause, the record reflects that the agency

defendants have sought to greatly expedite their review of the underlying

contracts and grants, and to proceed toward final termination on an

individualized basis of those that are not consistent with the President's

foreign policy agenda—while resuming those that are.  *See AIDS Vaccine*

Dkt. No. 22-1, at 4-8.  As the record demonstrates, that individualized review

has necessarily been cumbersome and time-consuming.  *See id.*

On Monday evening, plaintiffs in *Global Health* submitted an

emergency motion to enforce the court's order.  Their declarations focused on

"work completed prior to January 24, 2025" and sought prompt payment for

such work.  *Global Health* Dkt. No. 36-1, at 2; *see Global Health* Dkt. No. 36-

2, at 1 (discussing invoices "for work that preceded Secretary Rubio's

[memorandum] on January 24, 2025").

7

Yesterday, and once again before the government had the opportunity to file any written response, the district court held a hearing and orally granted plaintiffs' motion. The court declined to address the government's argument that claims for specific monetary payments did not fall within the waiver of sovereign immunity provided by the APA and would instead need to be pursued through ordinary dispute-resolution procedures or in another lawsuit, potentially in the Court of Federal Claims. The court ordered that, by today, February 26, 2025, at 11:59 PM, the agency defendants "shall pay all invoices and letter of credit drawdown requests on all contracts for work completed prior to the entry of the Court's [order] on February 13." Hearing Tr. 57-58. And the court ordered the agency defendants to "permit and promptly pay letter of credit drawdown requests and requests for reimbursements on grants and assistance agreements" for "work completed prior to the entry of the Court's [order] on February 13." *Id.* at 58. The court further directed that the defendants "shall take all necessary action to ensure the prompt payment of appropriated foreign assistance funds." *Id.* The order does not, on its face, limit those directives to *plaintiffs'* invoices, letters of credit, or grants. Nor is it limited to invoices or payment demands

8

that are legitimate, supported by necessary documentation, or due and owing under the terms of the instruments.

## ARGUMENT

**A.** The district court's order represents an extraordinary usurpation of the President's authority.  In the guise of "enforc[ing]" its earlier order— which was itself an intrusion into the President's Article II authority over foreign affairs—the district court ordered the government to, "[b]y 11:59 p.m." today, "pay all invoices and letter of credit drawdown requests on all contracts for work completed prior to the entry of the Court's [order] on February 13."  Hearing Tr. 57-58.  And although the previous order did not address any specific funding instruments, the court ordered the government to "permit and promptly pay letter of credit drawdown requests and requests for reimbursements on grants and assistance agreements."  *Id.* at 58.  The government's understanding is that the universe of potential payments encompassed by this order—which is not limited to requests submitted by plaintiffs—approaches $2 billion.  *AIDS Vaccine* Dkt. No. 37-1, at 2.  And even for plaintiffs alone, the defendant agencies believe that the amounts implicated may exceed $250 million.

This new order requiring payment of enormous sums in less than 36 hours intrudes deeply into the prerogatives of the Executive Branch and the President's obligation under Article II to take care that the laws are faithfully executed.

As the record explains, relevant agency leadership have determined that, "[h]istorically, USAID had limited and insufficient payments control or review mechanisms," which led to payments being made "without sufficient opportunity for payments integrity or program review." *AIDS Vaccine* Dkt. No. 22-1, at 2. Agency leadership has determined that those "system deficiencies and inability to provide complete information" has "led to serious questions about waste, fraud, abuse, and even illegal payments." *Id.* For example, agency leadership's "understanding is that some payment requests are not supported by any documentation"—or are supported by "inadequate documentation to show actual work performed, compliance with the terms of the relevant contract or award, and the like." *AIDS Vaccine* Dkt. No. 37-1, at 8.

As a result, "USAID is in the process of adopting a comprehensive review process for assuring payment integrity and determining that payments under existing contracts and grants are not subject to fraud."

10

*AIDS Vaccine* Dkt. No. 22-1, at 3.  Agency leadership has determined that payments "will be released as they are processed through" this comprehensive review structure.  *Id.*  And indeed, according to the record, between February 13 and February 18, USAID "has authorized at least 21 payments that are in total worth more than $250 million."  *Id.* at 4.

Similarly, agency leadership has "implemented revisions to the system for disbursements of foreign assistance funds" from the State Department.  *AIDS Vaccine* Dkt. No. 22-1, at 7.  Those "new procedures" are intended to "ensure payments are both in compliance with policy and have the appropriate management controls"—controls that "are intended to assure payment integrity and determine that payments under existing contracts and grants are not subject to fraud or other bases for termination."  *Id.*  As with USAID, the record reflects that the State Department has begun processing legitimate payments through these new systems—including "authoriz[ing] or request[ing] the disbursement of $112.9 million" between January 24 and February 18.  *Id.* at 8.

The district court has now entirely disregarded the Executive Branch's serious interest in ensuring that payments are made only for legitimate expenses.  By ordering that the government make nearly $2 billion in

11

payments by 11:59 PM today—less than 36 hours after entry of the court's order—the district court has effectively precluded the government from scrutinizing the relevant invoices or conducting a payment-by-payment analysis to ensure the legitimacy of all payments. As a result, the government faces the possibility of being forced to expend enormous sums of taxpayer dollars without knowing whether those payments are for legitimate expenses. And indeed, even assuming all of the relevant payments were legitimate, agency leadership has determined that the ordered payments "cannot be accomplished in the time allotted by the" district court. *AIDS Vaccine* Dkt. No. 37-1, at 2.

Moreover, there is no sure possibility of the government's recovering the funds if it later determines that particular payments should not have been made. Recipients of funds "are often overseas and once money leaves the Government's accounts," the government loses control of those funds; recipients may, for example, promptly transfer funds to third-party sub-vendors and contractors. *AIDS Vaccine* Dkt. No. 37-1, at 10. In addition, to the extent that "plaintiffs have claimed that many grant recipients and contractual counterparties are insolvent or nearly so," that raises the possibility that "they will immediately spend any funds they receive—

making it impossible for the Government to recover those funds as a practical matter." *Id.*

**B.**  In addition to ignoring the government's own processes for assessing monetary claims, the district court ignored the statutory avenues for raising such claims in federal court.  This entire case has gone terribly off track.  What started as a (misguided) APA challenge to a particular agency memorandum is now apparently an agglomeration of countless individual breach-of-contract suits that have been effectively adjudicated without so much as any review of the contracts or opportunity for the government to present defenses.

Congress has created an intricate statutory scheme—along with a court with jurisdiction—to address assertions that the government has not honored the terms of its contracts and owes money to private parties as a result.  The district court declined to grapple with that scheme on the theory that the issue had not been raised in a written submission between the evening on which plaintiffs filed their motion and the morning when the hearing began.  The court was not entitled to assume that it had jurisdiction to obligate the expenditure of billions of dollars from the federal Treasury

13

without even reviewing (much less adjudicating) the thousands of pertinent instruments.

To the contrary, the federal government is "immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity." *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). And although the APA provides "a limited waiver of sovereign immunity for claims against the United States" seeking non-monetary relief, that waiver does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* (quotation omitted). That is why district courts do not adjudicate contract claims under the APA, and why this Court's docket is not filled with government contractors asserting contractual breaches or overdue payments.

That the district court would order the government to pay specific contractual invoices in less than 36 hours only highlights how badly this case has become unmoored. The district court's earlier orders—and plaintiffs' underlying claims in this case—related only to the permissibility of the government's implementation of an asserted blanket funding freeze. The government has contested the district court's exercise of jurisdiction over those claims. *See AIDS Vaccine*, Dkt. No. 33, at 11-21. But regardless of the

propriety of the court's original order, there can be no doubt that the court's new order—which requires the government to make specific payments on specific contracts and grants—has no proper jurisdictional basis.

There are well-worn paths for counterparties to government funding instruments to challenge the government's compliance with the terms of those instruments in federal court. To the extent that some of the funding instruments at issue in this case are procurement contracts, any dispute about payment on those contracts for work already performed would be governed by the Contract Disputes Act, which permits suit only following administrative exhaustion in the Civilian Board of Contract Appeals or the United States Court of Federal Claims. *See* 41 U.S.C. §§ 7103, 7104, 7105. This Court has made clear that those remedies operate to the exclusion of any suit in district court under the APA. *See A&S Council Oil Co. v. Lader*, 56 F.3d 234, 239-42 (D.C. Cir. 1995).

For other instruments, the Tucker Act may provide a remedy. That statute states that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a). This Court "ha[s] held that the Tucker Act impliedly

forbids" the bringing of "contract actions" against "the government in a federal district court." *Albrecht v. Committee on Employee Benefits of the Federal Reserve Employee Benefits Sys.*, 357 F.3d 62, 67-68 (D.C. Cir. 2004) (quotation omitted). And indeed, the Tucker Act's preclusive effect may not be limited to funding instruments described by plaintiffs as contracts. Instead, to the extent that the government has implemented its grant programs by "employ[ing] contracts to set the terms of and receive commitments from recipients," then the proper recourse for any asserted violation of those grant terms may also be a "suit in the Claims Court for damages relating to an alleged breach." *Boaz Housing Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021).

The inability to establish which of these alternative remedies precludes review as to each individual funding instrument only underscores the indiscriminate nature of the court's remedy and its failure to respect proper procedures or jurisdictional guardrails. The district court's order requiring the government to make specific contractual or grant-based payments exceeds the court's jurisdiction. And nowhere did the district court grapple with the source of any jurisdiction to enter that order. To the contrary, the district court declined to even consider these jurisdictional problems before

16

entering its order.  Instead, although the court recognized that the government had articulated many of these principles in its "briefing at the preliminary injunction stage," it believed that the argument was "not sufficiently developed to be considered" before entering its order.  Hearing Tr. 57; *see also* Hearing Tr. 46-47 (government pressing the jurisdictional argument at the hearing).  Respectfully, that is backwards.  Courts should not order the disbursement of potentially billions of dollars with no meaningful record and before seriously considering threshold jurisdictional objections.

The district court's refusal to consider its own jurisdiction before entering its order was wrong.  For one, the district court scheduled a telephone hearing at 11 AM yesterday after receiving plaintiffs' emergency motion the previous evening; in those circumstances the government can hardly be faulted for failing to file a brief in advance of the hearing—particularly when, as the district court recognized, the government had already developed this argument in its preliminary injunction brief, which was filed last week.  Regardless, even if the government had failed to brief that issue at all, that would not have relieved the district court of its "obligation to assure" itself that it "ha[d] jurisdiction" to enter its payment-

17

requiring order. *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017). That "obligation extends to sovereign immunity"—including issues regarding whether the APA's waiver applies or is impliedly displaced by other statutes like the Tucker Act—because that question "is jurisdictional in nature." *Id.* (quotation omitted).

**C.** At an absolute minimum, the district court's remedy was overbroad. Rather than limiting its injunction to plaintiffs' own requests for payment, the district court has required the government to promptly pay requests for payment for already-performed work. That is so regardless of who submitted the request, regardless of the merits of the request, and regardless of whether the terms of the pertinent funding instruments even require payment as of tomorrow.

That universal relief exceeds "the power of Article III courts," conflicts with "longstanding limits on equitable relief," and imposes a severe "toll on the federal court system." *Trump v. Hawaii*, 585 U.S. 667, 713 (2018) (Thomas, J., concurring); *see DHS v. New York*, 140 S. Ct. 599, 599-601 (2020) (Gorsuch, J., concurring in the grant of stay). Under Article III, "a plaintiff's remedy must be limited to the inadequacy that produced his injury." *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (quotation omitted), *see*

18

*Lewis v. Casey*, 518 U.S. 343, 360 (1996) (narrowing an injunction that improperly granted "a remedy beyond what was necessary to provide relief" to the injured parties). Similarly, traditional principles of equity require that an injunction be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see also Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 921 (2024) (granting stay of injunction "except as to the provision to the plaintiffs of the treatments they sought below")

The district court's universal relief flouts these principles. And it does so without any apparent justification—the court did not explain why such broad relief was necessary or appropriate in these circumstances. To the contrary, relief limited to the particular requests for payment submitted by plaintiffs would have fully redressed plaintiffs' own asserted injuries and would have been much more administrable. Moreover, the district court's universal relief only amplifies the extreme harm that its order inflicts. Of course, that broad relief increases the amount of money that the government is effectively required to pay without regard to internal payment controls. And that relief also makes it substantially harder for the government to properly conduct a payment-by-payment analysis by increasing substantially

19

the number of requests that the government must process within the next day.  It compels the payment of enormous sums without any proper review of any kind—not only to plaintiffs but to thousands of absent parties claiming hundreds of millions of dollars.

To be clear, even an order limited to plaintiffs would be improper and unlawful for a host of reasons.  But the court's refusal to limit its order to the parties before it is yet another illustration of how this case has gone off the rails.

**D**.  The affirmative and conclusive directive in today's order leaves no doubt that it is immediately appealable under 28 U.S.C. § 1292(a)(1).  Far from seeking to maintain "the status quo" while the district court considers a request for a preliminary injunction, *Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978), the court's order directs the government to disburse money in less than 36 hours.  The relief awarded was final as to the claims plaintiffs asserted in their recent motion (although they are not claims that are properly part of this case or properly asserted in the district court).  The order is thus not temporary in any relevant sense—the district court has definitively resolved how the government must dispose of this universe of

20

funds with no time to even ensure that the demands for payment are legitimate.

Appeal would be proper even if yesterday's order were labeled as a temporary restraining order.  An order requiring the government to release federal funds that cannot be retrieved has precisely the sort of "serious, perhaps irreparable consequences that [the government] can effectually challenge only by an immediate appeal." *Carson v. American Brands, Inc.*, 450 U.S. 79, 90 (1981) (quotation marks omitted); *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *4 (D.C. Cir. Feb. 15, 2025) ("[C]ourts consider whether the order had irreparable consequences that warrant immediate relief.").  This Court has jurisdiction to review an order whose practical effect is that the government's "rights will be irretrievably lost absent review." *Berrigan v. Sigler*, 475 F.2d 918, 919 (D.C. Cir. 1973).  It would be especially anomalous to treat the order at issue as a temporary restraining order when "an adversary hearing has been held, and the court's basis for issuing the order strongly challenged." *Sampson v. Murray*, 415 U.S. 61, 87 (1974).

Even if this Court were to conclude that the order is unappealable, the Court should exercise its discretion to construe this motion as a petition for

21

writ of mandamus. *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 548 n.6 (D.C. Cir. 1992). The district court's extraordinary order readily satisfies the standard for that relief. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004). Any money that is paid pursuant to the district court's order cannot be recovered, leaving the government with "no other adequate means to attain the relief." *Id.* at 380 (quotation marks omitted). Given that the APA plainly does not authorize the district court to order the government to pay sums of money by a date certain, the government's right to relief is "clear and indisputable." *Id.* at 381 (quotation marks omitted). And mandamus is "appropriate under the circumstances" because the district court has positioned itself to superintend the Executive Branch's disbursement of foreign assistance without regard to the ordinary mechanisms for processing payments in an orderly manner. *Id.*

22

**CONCLUSION**

For the foregoing reasons, the Court should grant an immediate

administrative stay of the district court's order and a stay pending appeal.

Respectfully submitted,

ERIC D. MCARTHUR
   *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
SEAN R. JANDA

 */s/ Brian J. Springer*
BRIAN J. SPRINGER
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7537*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, D.C. 20530*
   *(202) 616-5446*
   *brian.j.springer@usdoj.gov*

FEBRUARY 2025

23

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 4401 words.  The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point CenturyExpd BT typeface.

*/s/ Brian J. Springer*
BRIAN J. SPRINGER

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2025, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Brian J. Springer*
BRIAN J. SPRINGER